United States District Court
For the Western District of North Carolina
Charlotte Division
Civil No. 3.17-cv-00556-RJC
(3:12-cr-00068-RJC-DCK-1)

| Jonathan Davey, | ) | |
| Petitioner | ) | RECEIVED |
| | ) | CHARLOTTE, NC |
| vs. | ) | DEC 15 2017 |
| | ) | |
| United States | ) | Clerk, US District Court |
| | | Western District of NC |

Petitioners Reply Brief

**Introduction**

Davey filed a petition for post-conviction relief. The Government filed their Response on 11/13/17, see Case 3:17-cv-00556-RJC. Document 4. This Reply is solely in regard to page 26 of Document 4 in which the Government put forth its argument *why their failure to disclose* the Deferred Prosecution Agreement ("DPA") entered into by Community One Bank ("COB") with the US was not a *Brady* violation. The Government made two arguments. First, they argued that the DPA was not material or exculpatory. *Id*. Second, they argued that the DPA was publicly available to Davey and counsel and therefore the due diligence rule precludes Davey from raising *Brady*. *Id*. The Government wants the district court to forgive the prosecutors for failing to disclose *Brady* evidence – in the instant case it is the DPA – if Davey or his lawyer knew or with due diligence could have known about the DPA.

Davey avers that the withholding of the DPA was material, exculpatory evidence that could have effectively gutted the US case against Davey. The withholding of the DPA denied Davey a *fair trial* in the district court.

**Background Facts**

At Davey's criminal trial in the district court the foundation of the US case against Davey was whether or not Davey had performed proper due diligence on Keith Simmons and his purported Black Diamond forex trading platform. See Davey Criminal Trial Case 3:12-cr-00068-RJC-DSC. "He started with other lies, fundamental lies like due diligence. Told them he had done due diligence. Well, that wasn't true at all. This was a lie. He hadn't any due diligence." Prosecution argument -See *Id*. at Doc. 277 at page 20.

Keith Simmons orchestrated the Black Diamond Ponzi scheme through a single account at COB; the Black Diamond Capital Solutions account. Davey, via his hedge fund Divine Circulation Services, wired his investor funds to that account. See COB Bill of Information Case 3:11-cr-00122-RJC-DSC. "Indeed, from April 23, 2007 until September 10, 2009, Simmons deposited with the Bank a total of

1

$35,071,773 of investor funds into account *12534 and withdrew from the bank over the same time span $35,071,883 from the same account." *Id.* At par 7.

Simmons operated in the small town of West Jefferson, North Carolina. "It was well known in the community that Simmons was supposedly investing in the foreign currency exchange market." *Id.* at par 7.C.

COB either turned a blind eye and, or had knowledge of the easily detectable Ponzi scheme; yet the bank did nothing "despite the hundreds of suspicious transactions that took place within one of Simmons' accounts over those two and one-half years, and despite the Bank's computer software repeatedly flagging Simmons' account activity as potentially suspicious." *Id* at par 8.

COB entered into the DPA with the US on April 26, 2011. COB was fined $400,000 and charged with one Count of "failing to maintain an effective anti-money laundering program." See Case 3:11-cr-00122-RJC-DCS.

The DPA was signed on behalf of the US by Kurt Meyers and Mark Odulio. *Id.* This is the same prosecution team that prosecuted Davey and every other defendant charged in relation to the Simmons Ponzi scheme.

Davey was charged via a Bill of Indictment ("Bill') on February 22, 2012. Also charged were Toft, Sloat, and Murphy. The Bill also enumerated entities and persons implicated in the Ponzi scheme: Divine Circulation Services, Sovereign Grace, Shiloh Estates, Safe Harbor Wealth, Simmons, Coats, Jordan, Lacy, Muyres, and Scarboro. See Document 1 at Case 3:12-cr-00068-RJC-DSC .

Conspicuous by their absence is any mention of Community One Bank. Also in the Bill, the "Investment Fraud Conspiracy" consists of two parts: A. "Due Diligence and Investment Quality Misrepresentations "and B. "Derivative Ponzi Scheme. "*Id.*

Davey was assigned counsel and arraigned on March 27, 2012. *Id.* At Doc 26. A trial date was set for June 2012.

Davey counsel received discovery in April 2012 consisting of 284,901 pages including approx. 20,000 pages of COB discovery. *Id.* At Doc 39. In this instant case, it is notable by its absence that the *DPA was not included in the COB discovery provided to Davey by the same prosecutors who prosecuted COB.*

On 5/15/12 a Superseding Bill of Indictment was filed against conspirator Bryan Coats. Again, continuing a troubling pattern by the same prosecution team, there was no mention of COB's culpability in the Simmons Ponzi scheme. See Document 11 at Case 3:11-cr-00309-RJC .

On 5/30/12 the trial against Davey and co-defendants was postponed. See Case 3:12-cr-00068-RJC-DSC.

On December 8, 2014, Community One Bank, 3:11cr122, was listed as a Co-Defendant in the "Amended Judgement in a Criminal Case". *See US v Keith Franklin Simmons*, Case 3:10-cr-00023-RJC-DCK, Doc 108

2

**Reply Point A.**

**I. The suppression by the prosecutors of Community One Bank's Deferred Prosecution Agreement was favorable, material and exculpatory evidence which violated Davey's due process to a fair trial.**

To prove a Brady violation, a defendant must show the evidence at issue meets three critical elements. First, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v Greene,* 527 U.S. 263, 281 (1999). Second, it "must have been suppressed by the State, either willfully or inadvertently." *Strickler,* 527 U.S. at 282. Third, the evidence must have been material such that prejudice resulted from its suppression. *Id.* The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v Whitley*, 514 U.S. 419, 434 (1995). Materiality "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal... [Rather], [a] 'reasonable probability' of a different result is...shown when the government's evidentiary suppression undermines confidence in the outcome of trial." *Id.*

Davey testified at his criminal trial that his due diligence concerning his investment of client funds in the Black Diamond forex trading program consisted of the following: a) long discussion in winter of 2007 with Bryan Coats, someone he trusted and who said he had good experiences with Simmons, see Doc 276 page 122; b) discussions with Simmons in Winter of 2008, research into Simmons personnel, and document review, See 3:12-cr-00068-RJC-DSC Doc 276 at pages 128-130;

Davey's due diligence didn't end once he made his first investment in December 2007. Learning more about a trader and *monitoring red flags* over time is an on-going task that continues as long as one holds the investment. To be sure, in 2008, there was not publicly available information on forex traders, as compared to a company trading on a public stock exchange. Secondly, the traders themselves were reluctant to reveal their trading strategies for fear of imitation. This opaque nature of traders' 'black boxes' led to many otherwise prudent investors being caught up in an explosion of Ponzi schemes since Madoff became a public figure.

Davey, throughout 2008, continued to make Black Diamond redemption requests on behalf of his clients. Davey was receiving statements indicating growing trading profits. Davey saw no red flags since every payout was promptly processed.

Testimony of Simmons employee Jennifer Dowell, Simmons Trial transcript Case 3:10-cr-00023-RJC-DCK, DOC 86, page 102-103:
Dowell: "The Divine Circulation was a hedge fund. You know, they were [sic] investors. Then we would send them what their withdrawals and they [sic] also, you know, send in deposits."
Odulio: "What about deposits? How would investors get their funds to Black Diamond?"
Dowell: "They would wire them in, wire them to Community One Bank."
Odulio: "Okay. And how would you be informed of an incoming wire?"
Dowell: "Sometimes, you know, they would tell me that they sent a wire. Then I would always get a wire receipt from the bank.
Odulio: "Okay. After receiving the wire receipt, what steps did you take at Black Diamond?"
Dowell: "I would put in on their spreadsheet. Then that would go into their file."
Odulio: "Okay. About the wire transfers going out, Ms. Dowell, who had the last say in those wire

transfers?
Dowell. "Keith. He would always call the bank and confirm before anything could be sent out.
Odulio: "And who was the what was the main bank account you dealt with during the time you were there?
Dowell: "The Black Diamond Capital Solutions."
Odulio: "And what financial institution was that at?"
Dowell: "It was Community One."

Davey, after seeing zero red flags, requested a $3.3 million dollar payout in October 2008. It was promptly processed. See Case 3:12-cr-00068, DOC 276, Page 133. It is precisely when payouts are delayed, as occurred here in 2009, that a red flag alerts the diligent investor that there could be problems.

COB was not some outside or third party entity that Davey was attempting to shift blame to as the Government claims. See Gov't Response at page 26. The bank was a co-conspirator, without whose participation the fraud could not occur.

At no point in the Simmons' trial was testimony proffered about the DPA that the bank entered in to with the Government.

Exculpatory evidence need not show defendant's innocence conclusively. Under Brady, "[e]xculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence..."  Giglio v United States, 405 U.S.150,154 (1972).

In conclusion, the withheld DPA was favorable, exculpatory, and material because it would have undercut the Government's main argument at trial that Davey was not diligent. The materiality of COB's withheld DPA vis a vis Davey's due diligence can be aptly summed up by the prosecution at Davey's criminal trial; "Again, that [bank records] showed that these Ponzi payments were made. Why are they important? Well they do a couple of things. Number one, they keep the scheme going. They promote it. They keep it moving forward. What else do they do? They conceal it. **They conceal from the folks [ eg. Davey] who are receiving these monies [ eg., Davey] the true nature of it. So, no one who gets this money understands, or is told that, Hey, this is a Ponzi scheme. Instead they [eg., Davey] are lied to that this money is purportedly returns on their investment."** See Case 3:12-cr-00068-RJC-DSC, DOC 277, page 26.


**Reply Point B.**

**1.The government's reliance on the due diligence rule to justify not disclosing the Brady evidence [the DPA] is misplaced.**

At page 26 of Doc 4 of the Gov't Response (Case 3:17-cv-00556-RJC) the government argues that the
DPA was public information—pointing to two press releases on the internet on May 23, 2012. The government then cites to a 5th circuit case – *United States v Infante*, 404 F.3d 376, 386-87 (5th Cir 2005) for the proposition that there is no *Brady* violation if the DPA was public information or if the case of a co-conspirator was a public record.

In *Infante*, Mr. Infante, along with 4 co-conspirators were charged in an indictment with conspiracy stemming from the *same incident* that formed part of the conspiracy case against Infante. The 5th circuit decided that there was no Brady violation for a failure to disclose favorable information: "We cannot agree [ that there is a Brady violation] , especially when the [case] file pertains to an alleged co-conspirator and the charges against the co-conspirator are so closely related to the conspiracy with which the defendant is charged". *Infante* at 385.

In contrast to *Infante*, the *Brady* evidence [Community One's DPA] was not disclosed to Davey in the Bill of Indictment vs Davey. The incident that formed the case *against* COB was from the bank's participation with Simmons in the Ponzi scheme.

Davey had no idea of the existence of the DPA vs Community One. He was indicted in February of 2012; arraigned on 3/27/12; 280,000 pages of discovery was dumped on his counsel in April 2012 as she was preparing for a June 2012 court date. Coat's Superseding Bill of Information was filed on May 15, 2012 with no mention of COB. The witness testimony at Simmons trial in December 2010 revealed no mention of any COB culpability. *Supra* Background Facts.

It would be completely unreasonable for Davey or his counsel to be scavenging the internet for hints of undisclosed Brady material when they are in the middle of reviewing discovery in May 2012. This burden shifting is what the US Supreme Court has guarded against.

In *Wilson v Beard,* 589 F.3d 651, 663-664 (3rd Cir 2009) the court got it right regarding the prosecutor's duty to disclose a public document. **".. the fact that a criminal record [ COB DPA] is a public document cannot absolve the prosecutor of her responsibility to provide that record to defense counsel."**

In 1995, the US Supreme Court explained the duty to disclose exculpatory evidence: "[T]he prosecution, which alone can know what is *undisclosed*, must be assigned the consequent responsibility to gauge the likely net effect of all [favorable] evidence and *make disclosure* when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf.... But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith*), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." Kyles,* 514 U.S. at 437-438.

By ignoring *Kyles* instruction that prosecutors must disclose evidence they know is favorable, the government is attempting to unreasonably apply clearly established federal law.

The 4th circuit has focused, in interpreting the due diligence rule, on what the *defendant himself* knew and could have told his lawyer in determining whether the defendant or his lawyer had exercised reasonable diligence in finding favorable evidence. See *Fullwood v Lee,* 290 F.3d. 663, 686 (4th Cir 2002).

**Reply Point C.**

**1. The United States Supreme Court has never recognized an *affirmative due diligence duty* of defense counsel as part of *Brady*, let alone an exception to the mandate of *Brady* as this would clearly be.**

This is precisely why the government could not cite to a U.S. Supreme Court case to support their argument that there is a public record doctrine that mitigates against the affirmative duty of the prosecutors to disclose publicly available Brady evidence [ the DPA].

The duty to disclose under Brady is absolute—it does not depend on defense counsel's actions. United State v Augurs, 427 U.S. 97, 107 (1976) ("[I]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise if no request is made.") Brady's mandate and its progeny are entirely focused on prosecutorial disclosure, not defense counsel's diligence.

This instant case gives the district court an opportunity to clarify the 4th circuit's position: the concept of due diligence plays no role in the Brady analysis.

**Conclusion**

**The state of the law and the facts particular to this case clearly establish that the government committed a material Brady violation that prejudiced Davey's due process right to a fair trial.**

Respectfully Submitted,

_____ 12/11/17

Jonathan Davey, pro se
Reg.#: 27328-058
FCI Elkton, Ohio
Lisbon, OH  44432

I certify that this brief was put in the prison mail system on ___12/11/17___ to the following address:

Clerk of Courts
Dist. Ct. Clerk Room 210
401 W. Trade Street
Charlotte, NC  28202